UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SEACOR MARINE LLC,**

    Plaintiff,

v.                                                 Case No: 8:14-cv-114-T-27TBM

**FPC SEA STRIKER, VIN: 1239968,
her engines, tackle, furniture,
equipment, and all other necessaries
appertaining and belonging,** *In Rem*
**and RIVERHAWK FAST SEA FRAMES,
LLC,** *In Personam*,

    **Defendants.**
_____/

## ORDER

**BEFORE THE COURT** is Claimants' Motion for Interlocutory Sale (Dkt. 41), Riverhawk's Response (Dkt. 42), and Claimants' Joint Reply (Dkt. 45). Upon consideration, the Motion is GRANTED.

### *Background*

Claimants, Seacor Marine LLC ("Seacor"), Suncoast Electronics and Supply, Inc. ("Suncoast"), and Midwest Construction Services, Inc. d/b/a Trillium Marine ("Trillium"), request the Court order the interlocutory sale of Defendant Vessel FPC 70 Sea Striker (official number 1239968), her engines, tackle, equipment, furniture, auxiliary vessels, appurtenances, necessaries, etc. (the "Vessel").[1]

---

[1] The Vessel is a 70-foot fast patrol vessel built for governmental/law enforcement purposes (Dkt. 1, ¶ 2; Dkt. 41 at 5).

1

On January 16, 2014, Seacor filed this admiralty action against the Vessel, *in rem*, and the Vessel's apparent owner, Riverhawk Fast Sea Fames, LLC ("Riverhawk"), *in personam* (Dkt. 1). Seacor holds a First Preferred Ship Mortgage in the amount of $1,500,000 securing a loan "to assist in financing procurement of marine engines" (Dkt. 1, ¶¶ 6-10). As of the date of the Complaint, Riverhawk owed $325,000 in principal plus interest, which is past due and owing as of June 30, 2013 (*id.*, ¶ 14). Plaintiff brings claims for foreclosure of the preferred mortgage and breach of contract.

On January 16, 2014, the Clerk was directed to issue a Warrant of Arrest for the Vessel (Dkt. 7). That same day, the U.S. Marshal was directed to surrender possession of the Vessel to National Maritime Services, Inc. as Substitute Custodian of the Vessel ("Substitute Custodian"), and the Substitute Custodian was ordered to assume the Vessel's custody at its berth at 5251 W. Tyson Avenue, Tampa, Florida 33611 (Dkt. 9). The Marshal arrested the Vessel and transferred custody to the Substitute Custodian on January 17, 2014 (Dkt. 11). On January 24, 2014, Seacor was granted authority to move the Vessel to a St. Petersburg, Florida marina (Dkt. 13). On January 15, 2014, Riverhawk filed a Verified Statement of Right or Interest (Dkt. 15). On February 21, 2014, Suncoast filed its Verified Complaint in Intervention alleging foreclosure of a maritime lien *in rem*, breach of contract *in personam*, and unjust enrichment *in personam* (Dkt. 20). On March 19, 2014, Trillium filed its Verified Intervening Complaint alleging breach of contract against Riverhawk, an *in rem* claim against the Vessel for breach of a maritime contract, an *in rem* claim against the Vessel for provided necessaries, and to foreclose a lien pursuant to Florida Statute § 713.60 for labor provided in the construction of vessels (Dkt. 27). Riverhawk has answered the complaints (Dkts. 26, 32, 36).

According to Claimants, the approximate aggregate of all claims was over $700,000 as of the date of this motion (Dkt. 41 at 3). The approximate monthly cost of maintaining the Vessel is $17,280 (Dkt. 41-1). The total amount of *custodia legis* expenses as of the date of the motion was $104,097.03, $42,735.29 of which had been paid (Dkt. 41 at 3; 41-1). Riverhawk has not moved for the Vessel's release nor sought to vacate the arrest.

### *Standard*

Rule E(9)(a)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule(s)") provides in relevant part:

> (i) On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold-with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court-if: (A) the attached or interested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or disproportionate; or (C) there is an unreasonable delay in securing the release of the property.

Supp. Rule E(9)(a)(i)(A)-(C). To prevail, Claimants need only show one of the three criteria. *Merchants Nat. Bank of Mobile v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1341 (5th Cir. 1981).

### *Discussion*

Claimants contend that all three criteria of Supplemental Rule E(9)(a)(i) are satisfied. Riverhawk does not dispute any of the criteria as set forth by Claimants. Rather, Riverhawk "believes that a sale of the Vessel at public auction would violate International Traffic in Arms Regulations, 22 C.F.R. §§ 120-130 ("ITAR") because the Vessel, in its current configuration constitutes a regulated defense article" (Dkt. 42 at 1). According to the Declaration of Mark Thomas Hornsby, Chief Executive Officer of Riverhawk, the Vessel and certain equipment on the Vessel at the time of the arrest, constitute defense articles subject to ITAR control (Dkt. 42-1 at ¶¶ 5-7).

Hornsby opines that the proposed public auction of the Vessel would be inconsistent with the requirements of ITAR (*id.* at ¶ 9). Moreover, Riverhawk does not believe the ITAR-controlled equipment on the Vessel can be sold without the permission of the German government (*id.* at ¶ 6).[2] Finally, Riverhawk believes that the Department of State and the Directorate of Defense Trade Controls must be notified of the proposed sale so that the government may be heard (*id.* at ¶ 11).[3] In their Reply, Claimants suggest that the sale can go forward so long as it is subject to certain conditions, including notifying the appropriate government entities so they may determine the Vessel's ITAR status, and, if necessary, qualify potential bidders.

Claimants contend the monthly expenses are excessive and disproportionate to the amount of the claimed liens. The expenses attributable to the Vessel during seizure is more than $17,000 per month. Over $100,000 in *custodia legis* expenses have already been incurred. The monthly expenses continue to accrue and will amount to close to $300,000 at the time of the scheduled trial (April 2015). While Claimants state that the value of the claimed liens is over $700,000, no support is provided and the amounts sought in the complaints appear to far exceed $700,000.

Claimants also submit that because of the unique nature of the Vessel, the expenses are disproportionate to the amount that a sale of the Vessel may bring at a court ordered sale. However, Plaintiff has not provided evidence of the current value of the Vessel. It therefore cannot be determined, on the current record, whether the monthly expenses are disproportionate to the value

---

[2] The equipment was shipped to Riverhawk under temporary export licenses from the German government (Dkt. 42-1 at ¶ 5).

[3] Hornsby also opines that although Riverhawk has several "ITAR compliant buyers" interested in the Vessel, they will not participate in a public auction (Dkt. 42-1 at ¶ 10).

4

of the Vessel or the amount of claimed liens.[4] Claimants also fail to demonstrate that the expenses are excessive as they offer no evidence of what is usual, proper, necessary, or normal.[5]

Second, Claimants contend that the non-use of the Vessel since its arrest in January 2014 renders it susceptible to deterioration and depreciation in value. Other than this generalized assertion, however, they offer no evidence that the Vessel has deteriorated. And, although divers must routinely clean the drives due to the Vessel's advanced jet drive propulsion system, this maintenance would seem to prevent deterioration. In addition, the Substitute Custodian's invoice indicates that the Vessel is routinely washed and that routine equipment starts are performed, which would also prevent deterioration (*see* Dkt. 41-1). The evidence as to this criteria is therefore insufficient.

Finally, Claimants assert that there has been an unreasonable delay in securing the release of the Vessel. The Vessel has been in the Substitute Custodian's possession for over eight months. Riverhawk has not posted bond or otherwise attempted to secure the release of the Vessel. This constitutes an unreasonable delay. *See Merchants Nat. Bank of Mobile*, 663 F.2d at 1341-42 (unreasonable delay where the "owners of the vessels never posted bond, entered into any stipulation or otherwise attempted to secure the release of the vessels during the eight months after the seizure").

---

[4] Moreover, neither case cited by Claimants is particularly persuasive. Claimants rely on *Merchants Nat. Bank of Mobile*, where the Fifth Circuit found that the district court did not err in concluding that $17,000 per month attributable to the vessels during seizure was excessive. 663 F.2d 1338, 1341-42 (5th Cir. 1981). That decision was over thirty years ago and Claimants do not take inflation into account.

In *Stewart & Stevenson Servs., Inc. v. M/V Chris Way MacMillan*, the court found that $150 per day plus the cost of insurance was disproportionate to the vessel's value. 890 F. Supp. 552, 564 (N.D. Miss. 1995). The vessel in that case, however, was a sunken ship with a estimated cost of repair of over $2,000,000. *See id.* at 555.

[5] The term "excessive" is not defined in the Supplemental Rules. The ordinary meaning of the word must therefore be considered. *Reed v. Chase Home Fin., LLC*, 723 F.3d 1301, 1303 (11th Cir. 2013). Merrium-Webster's Dictionary defines "excessive" as "exceeding what is usual, proper, necessary, or normal." Merrium-Webster Online Dictionary,http://www.merriam-webster.com/dictionary/excessive (last visited September 26, 2014).

Because Claimants need only demonstrate one of the three criteria, the Vessel may be ordered sold. *See Merchants Nat. Bank of Mobile*, 663 F.2d at 1341 (5th Cir. 1981).

Accordingly,

Claimants' Motion for Interlocutory Sale (Dkt. 41) is **GRANTED**. The parties shall confer and, within **fourteen (14) days**, file proposed conditions to be imposed on the interlocutory sale, including but not limited to what entities to notify, how to determine whether the Vessel is ITAR-controlled, and how to qualify potential bidders, if necessary.

**DONE AND ORDERED** this 7th day of October, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record