UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SEACOR MARINE LLC,**

    Plaintiff,

vs.

                                         Case No. 8:14-cv-114-T-27TBM

**FPC SEA STRIKER, VIN: 1239968,**
her engines, boilers, tackle, furniture,
equipment, fixtures, and apparel, *in rem*,
and **RIVERHAWK FAST SEA FRAMES,
LLC,** *in personam*,

    Defendants.
_____/

**MIDWEST CONSTRUCTION SERVICES,
INC., d/b/a TRILLIUM MARINE,**

    Intervening Plaintiff,

vs.

**FPC SEA STRIKER, (Official No.: 1239968),**
her engines, tackle, apparel, furniture,
equipment, and appurtenances, *in rem*,
and **RIVERHAWK FAST SEA FRAMES,
LLC,** *in personam*,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Intervening Plaintiff Midwest Construction Services, Inc.'s unopposed Motion for Summary Judgment (Dkt. 63). Upon consideration, the motion is GRANTED.

*Background*

Plaintiff Seacor Marine, LLC initiated this admiralty action against the vessel FPC Sea

Striker ("the Vessel") *in rem*, and Defendant Riverhawk Fast Sea Frames, LLC ("Riverhawk"), *in personam*, seeking to foreclose on a preferred mortgage pursuant to the Commercial Instruments and Maritime Liens Act, 46 U.S.C. §§ 31301, *et seq*. (Dkt. 1). On March 19, 2014, Midwest Construction Services, Inc. d/b/a/ Trillium Marine ("Trillium") filed an Intervening Verified Complaint, which raised claims against the Vessel, *in rem*, and Riverhawk, *in personam*. (Dkt. 27). After Riverhawk filed its Answer to the Intervening Verified Complaint (Dkt. 36), the parties engaged in discovery and ultimately entered into a Joint Stipulation confirming Trillium's entitlement to relief consistent with the instant motion. (Dkt. 49). Subsequently, Riverhawk's counsel withdrew (Dkt. 61). Riverhawk has not opposed the instant motion.

Riverhawk admits that it entered into a Labor Agreement with Trillium, in which Trillium agreed to provide Riverhawk with employees to work on the construction and repair of vessels. In particular, Trillium provided labor for the Vessel, as well as two unfinished hulls, FPV 70-02 and FPV 70-03. Trillium invoiced Riverhawk for the labor and Riverhawk admits that it failed to pay Trillium for certain amounts invoiced. (Dkt. 27 ¶¶ 7, 9, 12-13; Dkt. 36 ¶¶ 7, 9, 12-13; Dkt. 72).

As noted, prior to the withdrawal of Riverhawk's counsel, Riverhawk and Trillium entered into a Joint Stipulation. (Dkt. 49). Pursuant to the Stipulation, it is undisputed that, as of October 20, 2014, Riverhawk owed Trillium $933,341.65 in unpaid invoices on eleven projects, including interest and fees. This amount includes $224,652.20 for services provided to the Vessel, $347,157.89 for services provided to the FPV 70-02, and $53,539.93 for services provided to the FPV 70-03. (Dkt. 49, Exh. A). It is also undisputed that Trillium perfected state-law liens on the Vessel and two unfinished hulls under Fla. Stat. § 713.60. (Dkt. 27 ¶¶ 36-37; Dkt. 36 ¶¶ 36-37).

### *Standard*

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party fails to demonstrate the absence of a genuine dispute, the motion should be denied. *Kernel Records*, 694 F.3d at 1300 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-08 (11th Cir. 1991)). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). The nonmoving party must "go beyond the pleadings," and designate specific facts showing that there is a genuine dispute. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

### *Discussion*

Trillium's Intervening Verified Complaint includes four counts: (1) a claim against Riverhawk, *in personam*, for breach of contract; (2) a claim against the Vessel, *in rem*, for breach

of a maritime contract; (3) a claim against the Vessel, *in rem*, for a maritime lien for necessaries; and (4) a claim to foreclose on the state-law liens against the Vessel and the two unfinished hulls.

### 1. *Breach of contract (Count I)*

The elements of a breach of contract claim under Florida law and admiralty law are the same: existence of a valid contract, a material breach, and damages.[1] *Sulkin v. All Fla. Pain Mgm't, Inc.*, 932 So. 2d 485, 486 (Fla. 4th DCA 2006); *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005). As discussed, it is undisputed that Riverhawk breached its Labor Agreement with Trillium, and that Riverhawk owes Trillium $933,341.65, an amount that includes interest and fees owing through October 20, 2014. (Dkt. 49; Dkt. 27 ¶¶ 7, 9, 12-13; Dkt. 36 ¶¶ 7, 9, 12-13; Dkt. 72).

Accordingly, Trillium's motion for summary judgment is granted as to the breach of contract claim against Riverhawk, *in personam* (Count I), in the amount of $933,341.65 plus additional pre-judgment interest accruing after October 20, 2014 at the rate, if any, specified in the parties' Labor Agreement, otherwise at prevailing rates. *See St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1191-92 (11th Cir. 2009) (noting that pre-judgment interest should be awarded in an admiralty case, absent "peculiar circumstances"); *Air Prods. & Chems., Inc. v. La. Land & Exploration Co.*, 867 F.2d 1376, 1380 (11th Cir. 1989) (observing that pre-judgment interest is another element of pecuniary damages under Florida law); *see also Merrill Stevens Dry Dock Co. v. M/V YEOCOMICO II*, 329 F.3d 809, 816 (11th Cir. 2003) (affirming award of pre-judgment interest at contractual rate of 18%); *Philippe v. Weiner*, 143 So. 3d 1086, 1089 (Fla. 3d DCA 2014)

---

[1] As discussed in the next section, Trillium has not established that the Labor Agreement is a maritime contract. Even if the claim arises under state law, however, the claim falls within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367.

(same).

## 2. *In rem claims (Counts II and III)*

Under federal maritime law, repairers and suppliers of maritime necessaries are entitled to a maritime lien against a vessel. *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 870 (11th Cir. 2010); 46 U.S.C. § 31342. To establish a maritime lien, a plaintiff must prove that: "(1) it provided 'necessaries' (2) at a reasonable price (3) to the vessel (4) at the direction of the vessel's owner or agent." *Sweet Pea Marine, Ltd.*, 411 F.3d at 1249. "Necessaries" include repairs and supplies, among other items. 46 U.S.C. § 31301(4). However, because a maritime lien can only attach for services rendered to a "vessel," services and supplies provided before the manufacturer finishes building the vessel, including construction labor and parts, do not give rise to a maritime lien. *See Chase Manhattan Fin. Serv., Inc. v. McMillian*, 896 F.2d 452, 456-57 (10th Cir.1990); *MacDougalls' Cape Cod Marine Serv., Inc. v. One Christina 40' Vessel*, 900 F.2d 408, 411 (1st Cir. 1990); *Matter of Mission Marine Assoc., Inc.*, 633 F.2d 678, 680 (3d Cir. 1980); *Nilo Barge Line, Inc. v. M/V Bayou DuLarge*, 584 F.2d 841, 843 (8th Cir. 1978). Trillium acknowledges this in its motion, differentiating between repair services it provided for the Vessel for which it seeks a maritime lien and construction services it provided for the two unfinished hulls.

A maritime lien cannot arise or be enforced unless the underlying contract is considered maritime. *E.S. Binnings, Inc. v. M/V Saudi Riyadh*, 815 F.2d 660, 666 (11th Cir. 1987) ("a prerequisite to the existence of a maritime lien based on breach of a contract for services is that the subject matter of the contract must fall within the admiralty jurisdiction"), *overruled in part on other grounds, Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603, 111 S.Ct. 2071 (1991). For a contract to be considered maritime, it "must be wholly maritime in nature, or any nonmaritime elements must

be either insignificant or separable." *Wilkins v. Commercial Inv. Trust Corp.*, 153 F.3d 1273, 1276 (11th Cir.1998). A contract for the construction of a vessel is not a maritime contract, while a contract for repair or rebuilding of a vessel is maritime in nature. *Hatteras of Lauderdale, Inc. v. GEMINI LADY*, 853 F.2d 848, 849-50 (11th Cir.1988); *see also Crimson Yachts*, 603 F.3d at 872-75 (explaining that "vessel" status may exist even if ship is dry-docked for extensive repairs); *Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, Hull No. 01*, 625 F.2d 44, 47 n.2 (5th Cir. 1980) (noting that hull had been test-sailed in navigable waters and therefore qualified as a vessel).

In support of its maritime lien claim, Trillium alleges that it "provided labor to repair" the Vessel (Dkt. 27, ¶ 19). Riverhawk admits that Trillium provided labor services to the Vessel, stipulating that the Vessel "was a vessel in navigation" at all times relevant to Trillium's claims, and that Trillium has a maritime lien on the Vessel in the amount of $224,652.20. (Dkt. 49 ¶¶ 3, 4).[2] Although Trillium's Intervening Verified Complaint alleges that the Labor Agreement involved both construction and repair services, (Dkt. 27 ¶¶ 10, 32), the services provided for the repair of the Vessel and the construction services provided for FPV 70-02 and FPV 70-03 are separable. (*see* Doc. 49-1, Exhibit A). Accordingly, Trillium has demonstrated that the underlying contract is maritime in character sufficient to prevail on its claims for a maritime lien and breach of that contract. Accordingly, Trillium holds a maritime lien in the amount of $224,652.20 and its motion is GRANTED as to Counts II and III.

---

[2] In its Verified Intervening Complaint, Trillium alleges that "the construction of the M/V FPC 70 SEA STRIKER (Official No.: 1239968) was completed and the vessel was operating as intended in May, 2012," her application for initial issue of a certificate of documentation was approved on May 29, 2012, and that it provided repair services from December 2012 through September 1, 2013 (Dkt. 27, ¶¶ 17, 18, 19). A vessel is said to be "in navigation" when "engaged in her expected duties as a vessel on navigable waters." *Williams v. Avondale Shipyards, Inc.*, 452 F.2d 955, 958 (5th Cir. 1971). Accordingly, by virtue of the parties' stipulation, it is undisputed that the Vessel was "in navigation" and that the labor services provided to the Vessel were for repair, rather than construction, and qualify as "necessaries."

3.  *Foreclosure of state-law liens (Count IV)*

In Count IV, Trillium seeks to foreclose on three non-maritime liens filed and perfected under Florida law as to the Vessel and the two unfinished hulls, FPV 70-02 and FPV 70-03. Specifically, Trillium asserts liens under Section 713.60 of the Florida Statutes, which authorizes the imposition of a lien in favor of a person performing labor for the benefit of a vessel. In contrast to federal maritime law, the Florida statute permits a lien for construction services, in addition to repair services. *See* Fla. Stat. § 713.60 (applying, in part, to labor "for use in the construction of any vessel").

As discussed, it is undisputed that Trillium provided labor repair services in the amount of $224,652.00 to the Vessel for which it holds a maritime lien. Likewise, it is undisputed that Trillium provided labor construction services in the amounts of $347,157.89 to the FPV 70-02, and $53,539.93 to the FPV 70-03. Pursuant to 46 U.S.C. § 31307, a state statute conferring a lien on a vessel is superseded "to the extent the statute establishes a claim to be enforced by a civil action in rem against the vessel for necessaries." Here, the relevant state law with respect to the Vessel establishes such a claim. Specifically, pursuant to Fla. Stat. § 85.011, liens established under Chapter 713 may be enforced, among other methods, by execution against the property subject to the lien. Fla. Stat. § 85.011(4); *see also* Fla. Stat. § 85.011(5) (providing summary action for liens involving labor performed). Although the relevant statutes do not expressly mention enforcement by "a civil action in rem," these remedies are effectively "in rem" and represent the type of relief that Trillium seeks. Accordingly, Trillium's motion, to the extent it seeks a non-maritime lien as to the Vessel, is **DENIED**, since the federal statute supersedes the Florida statute under which Trillium seeks its lien.

With respect to the two unfinished hulls, FPV 70-02 and FPV 70-03, Trillium is entitled to a state law non-maritime lien for $347,157.89 as to FPV 70-02 and $53,539.93 as to FPV 70-03. To that extent, Trillium's motion **is GRANTED** as to Count IV.

### *Conclusion*

Accordingly, Intervening Plaintiff Midwest Construction Services, Inc.'s Motion for Summary Judgment (Dkt. 63) is **GRANTED** *in part* and otherwise **DENIED** as set forth herein. Entry of a final judgment is deferred, pending a final determination of the priority of the competing claims against the Vessel. Trillium's request that the Clerk be directed "to issue a Writ of Execution on the property" (the two unfinished hulls, FPV 70-02 and FPV 70-03) is **GRANTED**.

**DONE AND ORDERED** this 13th day of January, 2015

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record